**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| HIGHER ONE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 3:10-cv-01435 (AWT) |
| | ) | |
| TOUCHNET INFORMATION SYSTEMS, INC., | ) | |
| | ) | June 8, 2012 |
| Defendant. | ) | |

**TOUCHNET'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS**
**COMPLAINT AND CERTAIN COUNTERCLAIMS, AND TO CONSOLIDATE CASES**

Though docketed on CM/ECF as a "Motion to Consolidate," Plaintiff's "Motion" actually requests many distinct forms of relief. In Plaintiff's cursory discussion of each request, it either misstates or fails to address the applicable legal standard governing these separate requests. As detailed more fully below, applicable law requires: (1) dismissal of Plaintiff's claims with **prejudice** along with an opportunity for TouchNet to move for an award of fees pursuant to 35 U.S.C. §285; (2) denial of Plaintiff's motion to dismiss the counterclaims brought by TouchNet Information Systems, Inc. (hereafter, "TouchNet"); and (3) denial of Plaintiff's motion to consolidate.

**I.     PLAINTIFF'S CLAIMS MUST BE DISMISSED WITH PREJUDICE.**

TouchNet agrees that Plaintiff's Complaint and all claims set forth therein must be dismissed based upon its covenant not to sue ("CNS"). However, TouchNet notes that Plaintiff's motion fails to specify that the dismissal of its Complaint should be "with prejudice." To be completely clear, the Complaint must be dismissed **with prejudice** and should also be conditioned upon TouchNet's statutory right to seek fees pursuant to 35 U.S.C. §285.

It appears that Plaintiff seeks dismissal of claims addressed by its Motion (expressly including the claims of its Complaint) "with prejudice." It did not ask the Court to make its

dismissal operate "without prejudice" and it failed to provide any explanation that might possibly justify dismissal of its claims without prejudice after its abrupt change of heart.   Further, Plaintiff's Memorandum concludes by asking the Court to dismiss claims (the Complaint and some of the counterclaims) and to consolidate cases "for all purposes."   Doc. 44-1 at 12. Presumably, that indiscriminate request asks for the dismissal of all claims covered by Plaintiff's Motion "with prejudice."   Plaintiff asked TouchNet to join that motion and advised it that the dismissal would operate "with Prejudice."   Doc. 44-1 at 5 (quoting Plaintiff's May 2, 2012 letter to TouchNet asking TouchNet to join motion to voluntarily dismiss case "with Prejudice").

If Plaintiff attempts to reverse course and seeks leave to dismiss its claims "without prejudice," the Court should not allow that.   Instead, this Court should dismiss the Complaint with prejudice.   First, Plaintiff's CNS estops it from reasserting these claims against TouchNet. *Dodge-Regupole, Inc. v. R.B. Rubber Products, Inc.*, 585 F. Supp. 2d 645, 653 (M.D. Pa. 2008) (*citing Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc.*, 363 F.3d 1361, 1375 (Fed. Cir. 2004)).   The covenant requires dismissal **with prejudice**.   *Dodge-Regupole,* 585 F. Supp. 2d at 653 (infringement claim pending for years dismissed with prejudice); *Lifetime Products v. Correll, Inc.*, 323 F. Supp. 2d 1129 (D. Utah 2004).[1]

Second, this Court should dismiss the Complaint with prejudice because Plaintiff offered no reason that the dismissal should operate without prejudice.   Rule 41 expressly provides this Court with discretion to condition a plaintiff's voluntary dismissal on terms that will avert any prejudice to the defendant, including dismissal "with prejudice."   *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1034 (Fed. Cir. 2006).   Factors considered in determining whether to

---

[1] Indeed, any attempt to dismiss its claims without prejudice would be inconsistent with the basis of its argument that the declaratory judgment counterclaims are moot.   *E.g.*, *Highway Equip., Inc. v. Seco, Ltd.*, 469 F.3d 1027 (Fed. Cir. 2006).

WA 3522509.7

dismiss with prejudice include whether the party has presented a proper explanation for its desire to dismiss; whether a dismissal would result in a waste of judicial time and effort; and whether the dismissal is sought merely to escape an adverse decision or to seek a more favorable forum. 469 F.3d at 1034 (*citing Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 187 F.3d 941, 950 (8th Cir. 1999)).   A court may grant dismissal with prejudice where, as here, a party seeks dismissal but fails to specify its request is "without prejudice" and offers no explanation why it should be without prejudice.   *Dodge-Regupole*, 585 F. Supp. 2d at 652.   Based on all these factors, the Court should dismiss the Complaint with prejudice and subject to TouchNet's right to attorneys' fees and costs under 35 U.S.C. §285.

## II.   TOUCHNET'S DECLARATORY JUDGMENT COUNTERCLAIMS SHOULD NOT BE DISMISSED.

Plaintiff asks this Court to dismiss three declaratory judgment claims but fails even to address each of them.  Plaintiff's cursory treatment misstates controlling authority and ignores the specific allegations of these counterclaims that are considered true at this stage.   To the extent the motion is based upon the CNS, Plaintiff's unexplained and belated dismissal of its claims not only fails to justify dismissal of TouchNet's counterclaims, it helps prove the counterclaims have merit.   Further, Plaintiff's argument is based on the wrong jurisdictional test; ignores the litigation history of this Plaintiff as well as its related patent; omits discussion of TouchNet's imminent rollout of a program not covered by the CNS; and ignores entirely the separate grounds for jurisdiction over TouchNet's unenforceability counterclaims.

### A.   Plaintiff Has Misstated The Relevant Legal Standard.

Despite Plaintiff's extensive reliance upon the Federal Circuit's decision in *Super Sack*, Doc. No. 44-1 at 10-11, Plaintiff fails to disclose that in its 2007 decision in *MedImmune*,[2] the

_____

[2] *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764 (2007).

United States Supreme Court held the Federal Circuit's jurisdictional test for declaratory judgment claims based upon non-infringement or invalidity (in *Super Sack* and other cases) was in conflict with precedent. *See Teva Pharmaceuticals v. Novartis Pharmaceuticals Corp.*, 482 F.3d 1330, 1338-40 (Fed. Cir. 2007). In other words, as the Federal Circuit itself recognized in the *Teva Pharmaceuticals* case, the *MedImmune* decision "effectively overruled the jurisdictional test applied in *Super Sack.*" *Lear Automotive Dearborn, Inc. v. Johnson Controls, Inc.*, 528 F. Supp. 2d 654 (E.D. Mich. 2007). *See also Benitec Australia Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007) ("However, the Supreme Court's opinion in *MedImmune* represents the rejection of our reasonable apprehension of suit test.").

The Supreme Court revised the "test for declaratory judgment jurisdiction," and held that "the proper analysis is one that considers all of the circumstances." *ICOS Vision Systems Corp. NV v. Scanner Technologies Corp.*, 699 F. Supp. 2d 664, 668 (*quoting MedImmune*). "*MedImmune* and its progeny have effectively 'lowered the bar…to bring a declaratory judgment action in a patent dispute.'" *Id.* (*quoting Frederick Goldman, Inc. v. West*, 2007 U.S. Dist. LEXIS 50259, at *7 (S.D.N.Y. July 6, 2007)).[3] "Since *MedImmune* the trend has been to find an actual controversy, at least where the declaratory judgment plaintiff's product arguably practices a patent and the patentee has given some indication it will enforce its rights." *Id.* at 669. "The Federal Circuit has also indicated that *MedImmune* articulated a more lenient legal standard for the availability of declaratory judgment relief in patent cases." *City of Aurora, Colorado v. PS Systems, Inc.*, 2008 U.S. Dist. LEXIS 82053 (D. Colo. Sep. 19, 2008) (*citing Cat Tech, LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008)). The *City of Aurora* Court rejected cases

---

[3] All unreported cases are attached as Exhibit F.

WA 3522509.7

decided under the reasonable apprehension test as no "longer valid in light of the more lenient standard articulated in *MedImmune*." *Id.*

### B.      Predictably, Plaintiff Ignored Its Burden Under The Applicable Test.

Based upon its reliance on the now-overruled "apprehension of suit" test, Plaintiff not surprisingly failed to address the factors that require this Court's retention of jurisdiction over these declaratory judgment counterclaims.  Plaintiff ignored entirely its heavy burden under the proper test.   The initial burden of establishing jurisdiction rests with the party invoking jurisdiction but once it satisfies that burden, "the party arguing that a case has become moot bears '[t]he burden of bringing forth such further information' of mootness." *Dey Pharma, L.P. v. Sunovion Pharmaceuticals, Inc.,* 677 F.3d 1158, 1166  (Fed. Cir. 2012) (citations omitted). The "heavy burden of persuading" the court that a case is moot "lies with the party asserting mootness." *Id.*   "When a party attempts to strategically moot a case, two basic principles of federal jurisdiction come into conflict:  First, the federal jurisdiction is limited to cases of actual controversy between the parties, and second, that federal jurisdiction is not (or at least should not be) subject to manipulation by parties who 'might contrive to moot cases that otherwise would be likely to produce unfavorable precedents.'" *Diamonds.net, LLC v. Idex Online Ltd.*, 590 F. Supp. 2d 593, 596 (S.D. N.Y. 2008) (citations omitted).  Plaintiff's motion and memorandum fail even to address, let alone satisfy, its "heavy burden" under the now-applicable *MedImmune* test.

### C.      Each Factor In The Now-Applicable Test Favors Retention of Jurisdiction.

#### 1.      The Threat of Future Claims Justifies Ongoing Jurisdiction.

"Post-*MedImmune*, a covenant not to sue may or may not divest a court of jurisdiction over a declaratory judgment claim, depending on the circumstances." *Petter Investments, Inc. v. Hydro Engineering*, 828 F. Supp. 2d 924 (W.D. Mich. 2009) (*citing Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848 (S.D. Tex. 2009)).  "In patent litigation a party may seek a

5

declaratory judgment even if a patentee has not filed an infringement claim, and "the desire to avoid the threat of a 'scarecrow' patent, may therefore be sufficient to establish jurisdiction under the Declaratory Judgment Act."  *Fenton Golf Trust v. Cobra Golf, Inc.*, 48 U.S.P.Q.2d 1198, 1203 (N.D. Ill. 1998)(*citing Cardinal Chemical Co. v. Morton Int'l Inc.*, 508 U.S. 83, 95 (1967)).  The threat of future claims by a party who previously sued a patent holder is sufficient to satisfy the jurisdictional requirement for the declaratory judgment claims for invalidity and non-infringement.  *Fenton Golf Trust, id.*

### 2. The Similarity Between The Patent-In-Suit And Plaintiff's Other Patents Justifies Ongoing Jurisdiction.

When two related patents are the subjects of separate suits, courts are particularly inclined to retain jurisdiction even when a patent holder offers a covenant not to sue on one of the patents.  *Petter Investments, id.* at 933-34; *Dow Jones & Co. v. Ablaise, Ltd.*, 583 F. Supp.2d 41, 44 (D. D.C. 2008).  In *Harris Corp. v. FedEx Corp.*, the Court similarly concluded that the existence of a related patent in another suit justified continued jurisdiction despite a CNS.  670 F. Supp. 2d 1306, 1315 (M.D. Fla. 2009).  Because the relationship between an unasserted patent and the patent-in-suit were substantially related, the declaratory judgment claim was not mooted by the CNS.  *Id.*  There are "'sound prudential reasons' for retaining jurisdiction over unasserted patent counterclaims including the efficient utilization of the litigation resources of both bench and bar."  *Harris Corp.,* 670 F. Supp. 2d at 1315 *(quoting Dow Jones)*.

### 3. Plaintiff's Aggressive Litigation Conduct Separately Justifies Retention Of Jurisdiction.

A patent holder's aggressive litigation strategy also favors finding an actual controversy. *Diamonds.net*, 590 F. Supp. at 598 (*citing Microntech, Inc. v. Amosaid Tech., Inc.*, 518 F.3d 897 (Fed. Cir. 2008)).  Plaintiff has already commenced two infringement cases immediately after the patents issued and without any notice or discussion.   Plaintiff qualifies as one of the

6

"sophisticated business entities that are not, so to say, hesitant to make a federal case out of perceived invasion of their rights." *Diamonds.net*, 590 F. Supp. 2d at 598.  Thus, Plaintiff's past conduct is yet another factor favoring retention of jurisdiction here.  *Id.; see also ICOS Vision Systems*, 699 F. Supp. 2d at 670 (*citing SanDisk Corp. v. ST Microelectroniocs, Inc.*, 480 F.3d 1372, 1376, 1382 (Fed. Cir. 2007)).

### D.     Jurisdiction Exists Because TouchNet Has Taken Prepratory Steps Toward a New Technology.

Independently, jurisdiction over patent non-infringement and invalidity declaratory claims separately exists when a plaintiff has taken steps to develop new technology not included within the scope of the CNS.  A "court is not divested of jurisdiction where the declaratory judgment plaintiff has taken 'meaningful preparatory steps' toward developing new or updated technology not covered by the CNS [covenant not to sue]."  *ICOS Vision Sys.*, 699 F. Supp. 2d at 669; *Diamonds.net,* 590 F. Supp. 2d at 600.

The Federal Circuit concluded in *Cat Tech, LLC v. TubeMaster, Inc.*, that a "dispute" was "real—not hypothetical" where (as here) "it appears likely that, once the cloud of liability for infringement is eliminated, the accused products can be produced without significant design change."  528 F.3d 871, 882-83 (Fed. Cir. 2008).  Because the non-infringement plaintiff had already taken steps to be able to produce such products, there was a live case.  *Id.*  In *Poly-America LP v. Stego Indus. LLC*, the court denied a motion to dismiss a declaratory judgment action similar to this one because that plaintiff had engaged in sufficient preparatory work.  694 F. Supp. 2d 600, 608 (N.D. Tex. 2010).   It relied upon *Cat Tech*: "A party need not have engaged in the actual manufacture or sale of a potentially infringing product to obtain a declaratory judgment of non-infringement so long as the party can make a showing of

meaningful preparation for making or using that product." 694 F. Supp. 2d at 608 (*quoting Cat Tech*).[4]

The District Court in the *City of Aurora*, found sufficient meaningful preparation to exercise declaratory judgment jurisdiction where the plaintiff had taken concrete steps to begin conducting the alleged infringing activity because plaintiff had finalized plans and broke ground on construction of the project. 2008 U.S. Dist. LEXIS 82053, at *25-26. Likewise, in *HR Technology, Inc.*, *v. IMURA Int'l USA, Inc.*, 2011 U.S. Dist. LEXIS 59331, *11-13 (D. Kan. June 3, 2011), the District Court denied a similar motion to dismiss declaratory judgment counterclaims when the Court found that the investment of money and time in developing applications of a technology not covered in the covenant not to sue justified proceeding on the declaratory judgment claims.

The case that Plaintiff primarily relies upon, *Super Sack*, aptly illustrates the difference. "Defendant in *Super Sack* never contended that it has already taken meaningful preparatory steps towards an infringing activity by planning to make a new product that may later be said to infringe." *Diamonds.net*, 590 F. Supp. 2d at 600 (*quoting Super Sack*, 57 F.3d at 1060). Because TouchNet has made meaningful preparatory steps towards developing a new technology that is not covered by the CNS, Plaintiff's cases are inapposite.

### 1.   TouchNet has conducted more than meaningful preparation of its new product.

As TouchNet has made Plaintiff aware, TouchNet has meaningfully prepared a new product (the "TouchNet Program") in this space. This new product separately justifies retention

---

[4] Further, actual disclosures or marketing of the product is not required for jurisdiction to exist. If a plaintiff has "made meaningful preparation to conduct potentially infringing activity, showing that the plaintiff has prepared draft sales literature or otherwise disclosed its products to potential customers is not an indispensable prerequisite." *Cat Tech*, 528 F.3d at 883.

WA 3522509.7

of jurisdiction over these declaratory judgment claims.  The launch of the TouchNet Program is imminent, and TouchNet is in the later stages of offering a debit card to the market.

TouchNet has taken numerous concrete steps toward this new product offering, including entry into a binding contract.  *See* the affidavit of Mr. Daniel J. Toughey, which is attached hereto as Exhibit **A**, at ¶¶ 3 & 7.  In the last twelve months, TouchNet has conducted market research, product planning and development, and negotiations with financial entities.  *See* Ex. A at ¶ 4.  TouchNet's market research included student need surveys, competitive product research, and customer research.  *See* Ex. A at ¶ 5.  TouchNet's product planning and development included designing new software, researching and developing pricing models, designing a debit card, filing applications for registration of trademarks for the TouchNet Program, and researching customer service operations.  *See* Ex. A at ¶ 6.

> **2.    Because the plaintiff has expressly limited its covenant not to TouchNet's current technologies, the '744 patent is a continuing threat.**

Although the TouchNet Program does not infringe the '744 patent or any other patent, the TouchNet Program is, at least superficially, closer to Plaintiff's business model than is TouchNet's current program and product offerings.  The TouchNet Program involves accounts and debit cards for students, and includes software systems and debit cards linked to bank accounts.  *See* Ex. A at ¶¶ 3 & 8.  Some features of the TouchNet Program include establishing bank accounts for university students and providing debit cards to the students for accessing the bank accounts.  *See* Ex. A at ¶ 8.  Information regarding the students is used to establish bank accounts for the students.  *See* Ex. A at ¶ 12.  The TouchNet Program permits university students to receive payments from universities into the bank accounts.  *See* Ex. A at ¶ 10.  The TouchNet Program retains and adds to systems, functionalities, and features of TouchNet's current existing technologies.  *See* Ex. A at ¶ 11.

The TouchNet Program is arguably closer to Plaintiff's business model than is TouchNet's current existing technologies. The TouchNet Program will allow students to open bank accounts on-line, though the account opening process used by TouchNet is essentially identical to that used by banks for many years. Nevertheless, given Plaintiff's improperly broad proposed claim construction of the '744 patent's "soft bank account" term, there is reason to believe Plaintiff will attack the TouchNet Program as infringing the '744 patent. Plaintiff proposes that "a soft bank account" means "stored information that may be used to facilitate creation of an actual bank account." *See* Appendix A to Plaintiff's Proposed Construction (dated June 20, 2011), attached hereto as Exhibit **C**, at 1. In light of this stated view and because the plaintiff has limited its covenant not to sue to TouchNet's current technologies, the '744 patent is a continuing threat.

Specifically, both the '744 patent and the TouchNet Program involve opening bank accounts. The '744 patent includes creation of bank accounts: "a demand deposit bank [account] may be established …." *See* the '744 patent, attached hereto as Exhibit **E**, "Summary of the Invention" at 1:29-30. "Embodiments of the present invention are directed to a distribution of 'bank accounts' via an educational institution." *See* Ex. E at 2:44-45. The TouchNet Program includes establishing bank accounts for university students. *See* Ex. A at ¶ 8.

The '744 patent claims a "computer-implemented method performed by an account controller to facilitate a financial transaction between a student and an educational institution …." *See* Ex. E, claim 1 at 15:55-61. Students have the "[a]ability to electronically deposit refunds into any bank account … [or a] checking account provided by Plaintiff." *See* plaintiff's website, http://www.higherone.com/index.php? option=com_content&view=article&id=31

&Itemid=80 (retrieved June 8, 2012), attached hereto as Exhibit **D**, at 2.  Using the TouchNet Program, university students may receive payments from universities deposited into the students' bank accounts.  *See* Ex. A at ¶ 10.

The '744 patent includes creating a bank account based on information received via an educational institution.  "Information associated with an educational institution member is received via an educational institution."  *See* Ex. E at 4:1-2.  A "bank account is created for the member based on the received information."  *See* Ex. E at 4:19-20.  Under the TouchNet Program, student information is used to establish bank accounts for the students.  *See* Ex. A at ¶ 12.

The '744 patent includes creating a debit card for a student.  "A financial transaction token, such as a student identification card, may be produced and delivered to the student."  *See* Ex. E, "Summary of the Invention" at 1:26-27.  The TouchNet Program includes providing debit cards to students.  *See* Ex. A at ¶ 8; "Getting the Debit card," attached hereto as Exhibit **B**, consisting of images outputted by the TouchNet Program related to students obtaining debit cards.

In the current case, Plaintiff filed suit two days after the '744 patent issued, even though TouchNet's then-existing product offerings did not include the opening of any bank account of any kind or character.  In a separate pending case between the parties before the Court, Case No. 09-337, Plaintiff filed suit against TouchNet three days after the patent issued.  Here, the totality of the circumstances – Plaintiff's shoot-first-and-ask-questions-later proclivities; TouchNet's meaningful preparation and imminent launch of the TouchNet Program; plaintiff's express limitation of its covenant not to sue to TouchNet's current technologies; the superficial similarities between the TouchNet Program and aspects of the '744 patent; and, Plaintiff's

absurdly broad claim construction – provides more than the requisite basis for jurisdiction for declaratory judgment.

## III.  DEFENDANT'S COUNTERCLAIMS FOR UNENFORCEABILITY (COUNTS IV THROUGH VI) REMAIN INDISPUTABLY JUSTICIABLE.

Plaintiff's motion assumes that **each** declaratory judgment claim must **necessarily** be dismissed, and asks the Court to dismiss those counterclaims.  Plaintiff then asks the Court to consolidate "any" surviving counterclaims (including at least those Plaintiff has not addressed) with the '536 Patent case, apparently based on Plaintiff's belief that the absence of any claims regarding the '744 patent will cause this Court to reconsider its earlier decision to deny Plaintiff's motion to consolidate these same cases.  However, TouchNet's counterclaims for unenforceability are in **no way** subject to dismissal.

"Defendant would be sorely mistaken if it were to assume that its covenant not to sue divested the court of jurisdiction over plaintiff's claim for declaratory judgment of unenforceability."  *Jovanovich v. Redden Marine Supply, Inc.*, 2011 U.S. Dist. LEXIS 103117 at *9 (W.D. Wash. 2011) (*quoting U.S. Rubber Recycling, Inc. v. Encore Int'l, Inc.*, 2011 U.S. Dist. LEXIS 11678 at *20 (C.D. Cal. 2011)).  As TouchNet plans to seek attorney's fees under 35 U.S.C. §285, this Court retains jurisdiction to declare the patent-in-suit unenforceable. *Monsanto Co. v. Bayer Bioscience*, 514 F.3d 1229, 1243 (Fed. Cir. 2008).  As such, this case must remain separate from the '536 Patent case, as the Court ruled in denying Plaintiff's first motion to consolidate.

In Counts IV through VI of its counterclaims, defendant moves for a declaration of unenforceability.  Plaintiff fails to even address, let alone demonstrate grounds for dismissing, TouchNet's counterclaims seeking a declaration of unenforceability.  There is no argument in Plaintiff's motion (nor can one be made) that the putative CNS moots or otherwise deprives this

WA 3522509.7

Court of subject matter jurisdiction over the unenforceability counterclaims.  The consensus rule among federal courts requires retention of jurisdiction over claims of unenforceability.  "The precedent leaves the Court with little doubt that it has jurisdiction under §285 to consider defendant's allegations of inequitable conduct as to the withdrawn patents." *Jovanovich, id.* at *6.  "Pursuant to Federal Circuit precedent, the covenant cannot divest the Court of jurisdiction over [defendants'] counterclaims of unenforceability and inequitable conduct." *Harris Corp. v. FedEx Corp.*, 670 F. Supp. 2d 1306, 1310 (M.D. Fla. 2009).  *See also Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1242 (Fed. Cir. 2008) (holding request for attorneys' fees prevents CNS from divesting District Court jurisdiction over inequitable conduct claims).

The counterclaims for declarations of unenforceability cannot be properly dismissed.  Accordingly, the '744 patent will remain at issue in this case **regardless** of how the court rules on the other counterclaims, so this Court's prior denial of Plaintiff's first motion to consolidate the cases need not be revisited as is further discussed in Section V, *infra*.

## IV.   PLAINTIFF'S ATTACK ON COUNTS I AND II OF TOUCHNET'S COUNTERCLAIM ARE DEEPLY FLAWED.

### A.   Plaintiff Fails To Specify Any Basis For Dismissal of Counterclaims I and II But Its Apparent Basis Is Not Available Now.

Plaintiff purports to bring its "Motion" pursuant to Federal Rules of Civil Procedure 41(a)(2), 12(b)(1), and 42(a).  Doc. No.  44.  None of these enumerated rules provide a basis for the dismissal of Counterclaims I or II.  For example, Plaintiff cites Rule 12(b)(1) as the basis for seeking dismissal of the declaratory judgment counterclaims, but that rule has no applicability to Counterclaims I or II.  It appears to TouchNet that Plaintiff must be relying upon Rule 12(b)(6) (failure to state a claim).  However, not only has Plaintiff failed to make a motion under Rule 12(b)(6), it has already answered all of the counterclaims (*see* Doc. No. 20 – Plaintiff's Reply, filed November 24, 2010), and thus waived any right to seek relief under Rule 12(b)(6).  *E.g.,*

*Lubrano v. State of New York*, 2011 U.S. Dist. LEXIS 34903 (E.D.N.Y.) *1 ("the filing of an answer waives the right to file a 12(b)(6) motion").

> **B.    TouchNet Has Adequately Pleaded Its Antitrust Counterclaims As Plaintiff's Misrepresentations Were Not Within the Scope Of Acceptable "Attorney Argument."**

"Summary procedures should be used sparingly in complex anti-trust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators; and hostile witnesses thicken the plot."   *Poller v. Columbia Broadcasting Sys.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L. Ed. 2d 458 (1962).   "The claim under the antitrust laws has been adequately set forth in the complaint, highly factual and subjective questions of intent and purpose should be resolved after discovery and trial."  *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984).  "To determine whether prior art was intentionally omitted will require a fuller record.  In considering a 12(b)(6) motion, the only inquiry is whether UTC has satisfied Rule 9(b) by pleading the who, what, when, where, and how of the material misrepresentation and intent to deceive."  *Rolls Royce, PLC v. United Technologies Corp.*, 2011 U.S. Dist. LEXIS 20679, *15 (E.D. Va. Jan. 6, 2011).   Here, TouchNet had cited specific examples and provided explanations of misstatements that might have impacted the examiner's review of the application. *See Rolls Royce, id.* at *15.

Because TouchNet has satisfied the pleading requirements for its counterclaims, they are not subject to dismissal.   "For *Walker Process* to apply, a plaintiff must establish (1) a misrepresentation or omission, (2) intentionally done to deceive the PTO, (3) which the patent office justifiably relied on, and (4) but for the acts the patent would not have issued." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364 (Fed. Cir. 1998); *Kimberly Clark Worldwide v. First Quality Baby Products*, 2011 U.S. Dist. LEXIS 52416 *19-20 (M.D. Pa. May 17, 2011).

In Plaintiff's cursory, one-paragraph discussion of Counterclaim I, Plaintiff does not even specify a defect it claims entitles it to dismissal of that claim, let alone identify where it raised that defect for the Court's consideration.  Instead, it notes only that: "Attorney argument during prosecution of a patent application may present legal or interpretive arguments for patentability over the prior art reference *without* committing inequitable conduct."  Doc. No. 44-1 at 9 (*citing Young v. Lumenis*, Inc., 492 F.3d 1336 (Fed. Cir. 2007)).  While it is true some arguments *may* be presented without committing inequitable conduct, as the Federal Circuit held in *Young* based upon that summary judgment record, Plaintiff's conclusion that an attorney's argument may *never* state a claim for inequitable conduct does not follow from the *Young* holding.  If the misrepresentation would be actionable if made other than as an "attorney argument," it remains actionable.  And at this stage of the litigation, a Court must assume all allegations set out in the counterclaim are true.  Doing so, the Court must conclude that the counterclaim clearly states a claim upon which relief may be granted.

Plaintiff appears to argue that because the counterclaim is based upon "mere attorney argument" and because attorney argument can **never** be the basis of a viable *Walker Process* claim, this counterclaim must be dismissed.  This premise is clearly wrong.  The Federal Circuit has expressly rejected this argument.   In *Ring Plus, Inc. v. Cingular Wireless Corp.*, the applicant/defendant argued that if the prior art references "were before the examiner during prosecution," so that the applicant's statement about them was "merely attorney argument" then the statement "cannot be a material misrepresentation."   614 F.3d 1354, 1360-61 (Fed. Cir. 2010).  The *Ring Plus* Court rejected that very argument.  Specifically, it held:  "Although an attorney is free to argue vigorously in favor of patentability without being subject to allegations of inequitable conduct, 'the law prohibits genuine misrepresentations of material fact.'  Because

we uphold the district court's finding that applicants' Background statement was a misrepresentation, this statement was outside the bounds of permissible attorney argument." *Id.* at 1360 (affirming holding that applicant's description of two references identified for the PTO [a prior art patent and a prior art patent application] as not proposing software-based systems solution were material misrepresentations). *See also Rothman v. Target Corp.*, 556 F.3d 1310, 1328 (Fed. Cir. 2009) (applicant's attorney may vigorously argue in favor of patentability without being subject to allegation of inequitable conduct but "the law prohibits genuine misrepresentations of material fact.").

Apart from decisions like *Ring Plus* and *Rothman* that addressed the viability of such claims on a developed factual record, numerous federal district courts have held that those claims are sufficient to survive the Rule 12 pleading stage. Those courts have held unanimously that counterclaims premised solely upon "attorney argument" are sufficient to state viable claims, where they allege the required elements. For example, the Court in *Elan Corp. v. Teva Pharmaceuticals USA, Inc.,* expressly held that "arguments made to the PTO can form the basis for inequitable conduct defenses under certain circumstances." 2008 U.S. Dist. LEXIS 17807, at *2-3 (D. Del. 2008). The *Elan* Court concluded: "Gross mischaracterizations or unreasonable interpretations of the prior art reference can support an inequitable conduct determination. At this stage of the proceedings, the court is required to take defendant's factual representations as true, that is, that the arguments made to the examiner involve intentional falsehoods about a material reference." *Id. See Southco, Inc. v. Penn Eng'g & Mfg. Corp.*, 768 F. Supp. 2d 715, 723 (D. Del. 2011) ("the alleged misrepresentations" even if categorized as mere "attorney argument" were "sufficient to satisfy the requirements of" Rule 9(b)); *Wyeth Holdings Corp. v. Sandoz, Inc.*, No. 09–955–LPS–CJB, 2012 U.S. Dist. LEXIS 26912, at *38 (D. Del. Feb. 3, 2012)

("claim based upon allegedly false and misleading statements to the PTO regarding a prior art reference … can survive the pleading stage [assuming that the other elements of the inequitable conduct defense are sufficiently pled].").[5]

Plaintiff also suggests it is "particularly" true that "attorney argument" may not be deemed inequitable conduct whenever the argument at issue pertained to prior art references that were before the Examiner.  Doc. No. 44-1 at 10.  This contention is belied by *Ring Plus*.  In *Ring Plus*, an alleged misrepresentation was made about the prior art within the patent application considered by the Examiner.  Even though the prior art references were available to the Examiner, the Federal Circuit held the misstatement was actionable, just as Plaintiff's misrepresentations to the Examiner here are also actionable.

An applicant cannot be "relieved of responsibility for any alleged misstatements simply because the [reference was] before the PTO."  *Wyeth Holdings Corp.*, 2012 U.S. Dist. LEXIS 26912, at *36.  "It is not possible for a patent applicant to misrepresent the teachings of the prior art unless that material is before the PTO in the first place."  *Id.* (*citing Ring Plus*).  The approach suggested by Plaintiff "would create a perverse incentive, where applicants would be free to falsely characterize such documents, but then claim immunity from a later charge of inequitable conduct because the mischaracterized material was before the PTO."  *Id.*  In short, Plaintiff has identified no valid basis upon which Counterclaim I may be dismissed.

---

[5] Numerous other district court decisions have similarly refused to dismiss *Walker Process* claims where the elements of that claim were alleged.  *W.L. Gore & Associates, Inc. v. Medtronic, Inc.*, No. 2:10cv441. 2012 U.S. Dist. LEXIS 13611, at *16-17 (E.D. Va. Feb. 3, 2012); *Morton Grove Pharmaceuticals v. PAR Pharmaceutical Companies, Inc.*, 2006 U.S. Dist. LEXIS 13779 *28-29 (N.D. Ill. 2006); *Open LCR.com, Inc. v. Rates Tech, Inc.*, 112 F. Supp. 2d 1223, 1233 (D. Colo. 2000); *In Re Cardizem CD Antitrust Litigation*, 105 F. Supp. 2d 618, 643 (E.D. Mich. 2000); *Konami Digital Entertainment v. Harmonix Music Sys., Inc.*, 2009 U.S. Dist. LEXIS 117468 *6-7 (E.D. Tex. 2009); *HTC Corp. v. IPCOM*, 671 F.Supp.2d 146, 151 (D. D.C. 2009).

WA 3522509.7

### C.     Plaintiff's Request to Dismiss Counterclaim II Lacks A Cognizable Basis.

Similarly, Plaintiff has also failed to identify any basis upon which Counterclaim II may be dismissed.  Without authority or explanation, Plaintiff boldly proclaims that Counterclaim II (the claim for an antitrust violation based upon baseless patent litigation) is somehow "impossible" given the CNS.  As TouchNet previously noted in this opposition, Plaintiff's belated, unexplained dismissal of its complaint does not absolve Plaintiff from liability under this count.  Instead, that very conduct underscores the merits of TouchNet's counterclaim.

Plaintiff brought an unmeritorious claim that caused injury to TouchNet.  "In a suit alleging antitrust injury based upon a bad faith prosecution theory it is obvious that the costs incurred in defense of the prior patent infringement suit are an injury which 'flows' from the antitrust wrong."  *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 997 (9th Cir. 1979); *see also Brotech Corp. v. Light Eagle Int'l Technology Group, Inc.*, 2004 U.S. Dist. LEXIS 11552 *22-23 (E.D. Pa. June 21, 2004) ("cost of defending a patent infringement suit which had been brought in bad faith" constitutes an "antitrust injury"; *citing Handgards*).  TouchNet has incurred litigation costs, business costs, and market effects resulting from this litigation for two years. The belated dismissal now does nothing to cure these injuries already incurred.  Instead, dismissal of the case brought without cause merely proves the case was unmeritorious, and the dismissal does not constitute a full remedy.  *Id.*

## V.     THE COURT SHOULD AGAIN DENY PLAINTIFF'S LATEST REQUEST FOR CONSOLIDATION

Finally, this Court should again reject Plaintiff's repeated request to consolidate the surviving counterclaims with Case No. 09-3337.  While Rule 42(a) permits consolidation (for all purposes or less than all), it does so only where the "actions before the court involve a common question of law or fact."  Fed. R. Civ. P. 42(a).  Courts invoking Rule 42(a) "must in every

WA 3522509.7

instance consider whether the 'actions involv[e] a common question of law or fact.'" *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 354 (2nd Cir. 1993).  Plaintiff bears the burden to establish that common questions exist. *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993).

Given the variety of relief that Plaintiff has requested in its "Motion" and its cursory arguments in support of consolidation therein, it remains unclear to TouchNet what questions "of law or fact" that Plaintiff contends will remain in the second-filed case so as to satisfy the requirement they be common with questions presented by the first case.  For example, Plaintiff purports to "illustrate[]" its point that there exist common questions by citing every allegation that TouchNet set forth in any count of its Counterclaims – including the allegations of the counts that Plaintiff also contends must be dismissed.  Doc. No. 44-1 at 11 ("TouchNet's allegations illustrate this point.  [Dkt. No. 19, ¶¶ 10-78]).  Surely Plaintiff must be required to identify a common question with more particularity than that in order to satisfy its burden under *In re Repetitive Stress Injury Litig*.  If not, TouchNet will be required to respond to an ever-shifting target.  At minimum, the Court should deny Plaintiff's motion without prejudice and then permit Plaintiff to refile it after the Court has ruled regarding which (if any) of the counterclaims will be dismissed.  In that way, the parties will be able to brief the issues presented by the consolidation motion based on a known set of claims.

In any event and as TouchNet established in response to Plaintiff's first motion to consolidate, there are important reasons the cases should not be consolidated even if only Counts III, VII and VIII survive this motion (as Plaintiff requests).  Consolidation would still present a substantial risk of (further) confusing the jury in Case No. 09-337 by adding more claims to an action that will already present that jury with complex patent claims.  *E.g.*, *Clopay Corp. v.*

WA 3522509.7

*Newell Companies, Inc.*, 527 F.Supp. 733, 735 (D. Del. 1981).[6]  The patent infringement claims in Case No. 09-337 and the existing counterclaims will already present difficult enough questions for the jury to determine without adding at least one antitrust counterclaim to the mix (Plaintiff does not even seek to dismiss Count III, the predatory pricing claim).

Furthermore, consolidation would unfairly prejudice TouchNet's interest in balancing its right to have the claims in Case No. 09-0337 brought to an expeditious resolution with its right to have time to prepare its case for trial in Case No. 10-1435.  Courts have long recognized consolidation is inappropriate where the progress toward trial in one case is significantly more advanced that the other.  *E.g., Almonte v. Coca-Cola Bottling Co. of New York, Inc.*, 1996 U.S. Dist. LEXIS 20253 *7 (D. Conn. Dec. 12, 1996); *Aerotel*, 234 F.R.D. at 67.  Here, consolidation could force TouchNet to face either an unduly compressed schedule in No. 10-1435 or undue delay in resolution of No. 09-0337.  Either result would be unduly prejudicial to TouchNet.  The Court should again reject Plaintiff's request for consolidation of these cases.

Regarding other relevant factors (among others, equity and judicial economy), it remains difficult for TouchNet to analyze each factor's relative weight when it is unclear which counterclaims Plaintiff contends should be consolidated and which claims (if any) the Court may dismiss at Plaintiff's request.  Accordingly, the Court should either deny the motion to consolidate outright, or at least require Plaintiff to brief a renewed request with regard to the specific claims remaining in the case once this Court has ruled on the motions to dismiss.

---

[6] *See also Aerotel, Ltd., v. Verizon Communications Inc.*, 234 F.R.D. 64, 67 (S.D. N.Y. 2005) ("substantial non-overlapping issues" would be "confusing to the jury"); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, No. C-92-20643 RMW, 1994 U.S. Dist. LEXIS 17569, at *14 (N.D. Cal. 1994); *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 81 (D. N.J. 1993); *Kinberg v. Colorforms*, 89-CV-1156, 1989 U.S. Dist. LEXIS 8360 *5 (S.D.N.Y. July 21, 1989); *Hasman v. G.D. Searle & Co.*, 106 F.R.D. 459, 460 (E.D. Mich. 1985).

## CONCLUSION

For all the reasons set forth, Defendant TouchNet respectfully requests that this Court: (1) dismiss the Complaint herein <u>with prejudice</u> and make that dismissal subject to an opportunity for TouchNet to move for an award of fees pursuant to 35 U.S.C. §285; (2) deny Plaintiff's motion to dismiss the Counterclaims herein; (3) deny Plaintiff's renewed request to consolidate this case with Case No. 09-337; and (4) grant any other relief this Court deems just and equitable.

Respectfully submitted,

DAY & PITNEY LLP

By:_____/s/ Lih C. Chen_____
    Patrick J. Whalen
    Kyle E. Elliott
    Lih C. Chen
    SPENCER FANE BRITT & BROWNE LLP
    1000 Walnut Street, Suite 1400
    Kansas City, MO 64106
    Tel: (816) 474-8100
    Fax: (816) 474-3216
    pwhalen@spencerfane.com
    kelliott@spencerfane.com
    lchen@spencerfane.com

    DAY PITNEY LLP
    Elizabeth A. Alquist (ct15643)
    Nicholas A. Pisarsky (ct27916)
    242 Trumbull Street
    Hartford, CT 06103-1212
    Tel: (860) 275-0100
    Fax: (860) 275-0343
    eaalquist@daypitney.com
    npisarsky@daypitney.com

    KUTAK ROCK LLP
    I. Edward Marquette
    1010 Grand Blvd., Suite 500
    Kansas City, MO 64106

WA 3522509.7

Tel: (816) 960-0090
Fax: (816) 960-0041
Ed.Marquette@KutakRock.com

**<u>CERTIFICATE OF ELECTRONIC FILING</u>**

I hereby certify that on June 8, 2012, a copy of the foregoing TOUCHNET'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COMPLAINT AND CERTAIN COUNTERCLAIMS, AND TO CONSOLIDATE CASES was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____/s/ Lih C. Chen_____

WA 3522509.7