IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HIGHER ONE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 3:10-cv-01435 (AWT) |
| TOUCHNET INFORMATION SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO STRIKE NEW ARGUMENTS THAT PLAINTIFF FIRST INTRODUCED IN ITS REPLY BRIEF, OR IN THE ALTERNATIVE, MOTION FOR LEAVE TO FILE DEFENDANT'S SUR-REPLY**

On December 2, 2013, Plaintiff filed a bare-bones Renewed Motion to Dismiss and in support thereof also filed a nine-plus-page Memorandum of Law in Support. Excluding the caption, certificates, and the factual and legal standard sections, the memorandum of law contained about five pages of argument in support of the motion which sought (inter alia) the dismissal of a majority of TouchNet's counterclaims with prejudice based upon a purported covenant not to sue ("CNS") that Plaintiff alleges it has now informally given TouchNet (by e-mail between counsel).

In its cursory memorandum of law, Plaintiff chose to ignore completely the governing legal standard, under the Supreme Court's most recent opinion on such covenants, *Already, LLC v. Nike, Inc.*, that required it to bear the "formidable" burden of proving its CNS eliminated all risk that it could resume litigation, thus establishing it was "absolutely clear" there was no controversy. ⎯⎯ U.S. ⎯⎯, 133 S.Ct. 721, 728 (2013); see Defendant's Opposition filed 12/23/13 (Doc. No. 84) at 2. Plaintiff did so even though TouchNet's counsel made Plaintiff's counsel aware of the *Already* opinion, as well as the district court decisions that have already

applied it in patent cases, on multiple occasions. After TouchNet opposed the motion by demonstrating the many deficiencies in Plaintiff's "CNS" and its unsuccessful attempt to carry its burden under the *Already* standard, Plaintiff then filed a 10-page reply that contains a discussion of several new arguments and provides new citations to deposition testimony from several witnesses (purportedly supporting its motion) that Plaintiff failed to provide in its original memorandum.  Unsurprisingly, the reply brief contains a materially longer argument section than the original memorandum (nine-plus pages vs. five-plus pages).  This Court should not reward Plaintiff's tactic.  It should either refuse to consider the new arguments and testimony provided for the first time in the reply, or it should grant TouchNet leave to file a sur-reply of comparable length that discusses these new points.

## LEGAL STANDARD

Decisions from the Second Circuit,[1] as well as district courts within this circuit, have "made it clear" that raising "new issues" in reply papers is strongly disfavored. *Rowley v. City of New York*, No. 00 Civ. 1793(DAB), 2005 WL 2429514, at \*\*5-6 (S.D. N.Y. Sept. 30, 2005) (concluding "defense should have been raised prior to the reply papers and shall not be considered"; collecting cases).  *See also Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 3:11–CV–1209 (CSH), 2013 WL 4012795, \*1 (D. Conn. Aug. 5, 2013) ("in general, a party may not attempt to cure deficiencies in its moving papers by including new evidence in its reply to opposition papers"); *Alexander v. Westbury Union Free School Dist.*,  829 F. Supp. 2d 89, 118

---

[1] In *Rowley v. City of New York*, No. 00 Civ. 1793(DAB), 2005 WL 2429514, \*5 (S.D. N.Y. Sept. 30, 2005), the court cited three Second Circuit decisions so holding:  *Keefe v. Shalala*, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995) (courts normally "will not consider arguments raised for the first time in a reply brief"); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("[a]rguments may not be made for the first time in a reply brief"); *Nat'l Labor Relations Bd. v. Star Color Plate Serv.*, 843 F.2d 1507, 1510 n.3 (2d Cir. 1988) (rejecting a party's "attempts to raise for the first time [a new question] in its reply brief").

(E.D. N.Y. 2011) (declining to consider explanation made "for the first time" in reply brief; collecting cases).

"The reason" courts "refuse consideration" of new arguments and evidence first submitted in a reply brief is that if condoned by the court, this tactic "would be fundamentally unfair to" a non-movant because it would deprive it "of an opportunity to respond." *Travelers Indem.*, 2013 WL 4012795, at *2 (citation omitted). In some circumstances, district courts have exercised discretion to consider new arguments or evidence by granting leave for a non-movant to file a sur-reply to cure the prejudice that the non-movant would otherwise suffer. *E.g., Dixon v. NBCUniversal Media*, LLC, 947 F. Supp. 2d 390, 396-97 (S.D. N.Y. 2013); *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F.Supp.2d 381, 387 (S.D. N.Y. 2010).

In *Travelers Indem.*, this Court specifically directed non-movants faced with this tactic to "seek leave … to file a sur-reply to address those new issues."  2013 WL 4012795, at *3. Accordingly, TouchNet hereby seeks an order of this Court that either (1) refuses consideration of the new arguments/evidence first offered in Plaintiffs' Reply; or (2) grants leave for TouchNet to file a 10 page-or-less sur-reply that responds to the new arguments and evidence raised in Plaintiff's 10-page Reply in Support of Its Renewed Motion to Dismiss, ECF Doc. No. 85.  This Court should grant relief in one form or the other to protect TouchNet from this unfair sandbagging tactic that has been employed herein by Plaintiff.

## ARGUMENT

**1. Plaintiff's Reply Contains New Arguments and Cites Testimony Plaintiff Never Cited in Its Original Memorandum.**

Plaintiff makes a series of new legal arguments in its Reply for the first time.  For example, after completely ignoring the standard for mooting a claim by giving a CNS established by the Supreme Court in *Already, LLC v. Nike, Inc.*, ––– U.S. ––––, 133 S.Ct. 721 (2013),

Plaintiff addresses that case for the first time in its Reply by arguing erroneously that several post-Already cases "state that TN bears the burden of showing subject matter jurisdiction still exists over its declaratory judgment counterclaims." Reply (Doc. 85) at 3. Plaintiff's argument is clearly wrong as it misconstrues both of the Federal Circuit cases that it cites. Neither of those cases purported to reject the *Already* Court's clear holding. Instead, both cases were decided on the basis of judicial estoppel.[2]

Plaintiff also elects to address in its reply, for the first time, its burden under *Already* to show that its CNS could moot the controversy by making it absolutely certain there is no risk of its resuming its enforcement efforts against TouchNet or its customers with respect to products that it has sold or will sell. For example, Plaintiff responds to TouchNet's argument (see § III.B.4 of Doc. No. 84 at 10-11) by arguing, for the first time, that its CNS need not cover TouchNet's customers because it asserts (without any evidentiary support at all) that "there is no threat of future claims" because Plaintiff has not "asserted patent infringement against any of TN's customers" during the "nearly four years" this case has been pending. Reply at 5. Even accepting those bald assertions as true (facts about which TouchNet cannot be certain), the fact that an overly-aggressive patent holder like Plaintiff has not yet sued TouchNet's customers hardly means it will not attempt to do so in the future in order to exert influence over TouchNet.

---

[2] In *Organic Seed Growers and Trade Ass'n v. Monsanto Co.*, the Federal Circuit held that a patentee's representations can have an effect like a CNS and defeat justiciability of declaratory judgment claims only where an appellate argument panel relies upon counsel's representations at argument to make them "binding as a matter of judicial estoppel." 718 F.3d 1350, 1358 (Fed. Cir. 2013). The Court reached a similar result in its as-yet-unpublished opinion in *Cisco Sys., Inc. v. Alberta Telecomms. Research Ctr.*, No. 2012–1687, 2013 WL 4563117 (Fed. Cir., Aug. 26, 2013). Neither the parties nor this Court can accurately predict what might be said by counsel at oral argument in a future appeal, or what the Federal Circuit might rely upon therein. It thus cannot be clear whether the Federal Circuit will make binding Plaintiff's future representations about the CNS, after the fact. Plaintiff clearly cannot rely upon the holding in those two cases to make its CNS effective now.

After ignoring the fact that TouchNet has offered for sale certain products that it does not manufacture or sell now, so that they are clearly outside the CNS's scope, see Doc. No. 84, § III.B.3, at 9-10), Plaintiff attempts to meet its burden under *Already* by discussing it for the first time in its Reply. Reply at 7. To make matters worse by trying to take advantage of its delay in addressing this issue, Plaintiff argues only in its belated discussion in the Reply that TouchNet has "not even offer[ed] evidence of those alleged offers." Id. Plaintiff bears the burden of establishing its CNS eliminates the risk of it resuming litigation with absolute clarity, yet it chastises TouchNet for not offering evidence and does so only when TouchNet cannot respond further without leave of this Court. This Court should not reward these tactics.

Finally, Plaintiff waits until its Reply to discuss the new product that TouchNet has taken concrete steps to prepare for sale when imminent rulemaking is announced by the Department of Education.

**2.    TouchNet Would Be Prejudiced Unless This Court Grants Relief Because It Deserves an Opportunity to Respond if this Court Considers the New Arguments and Evidence Raised in that Reply.**

Plaintiff's belated citation of Mr. Urness's testimony regarding resources currently allocated to the new product in its reply does not assist its reply argument that the new product is not ready for launch.(See Plaintiff's Reply at pp. 7-8) If Plaintiff had made this argument in its original motion, TouchNet would have offered affidavit evidence that, for efficiency reasons, it intends to wait to allocate necessary resources for the product's launch, until just prior to launch. TouchNet also would have offered evidence establishing (1) that the resources required to launch will be minimal because the new product requires relatively small modifications to the existing product, and (2) it is likely to launch the new product as soon as the regulatory picture becomes clearer and it is determined that the product is viable under the regulation changes, which it

reasonably expects to be soon and likely as early as the completion of the spring meetings of the Rule Making Committee of the Department of Education.

Plaintiff's belated reply argument that TouchNet cannot launch its new product without first having customers and/or without having pilot programs is equally unavailing. (See Plaintiff's Reply at pp. 8-9) TouchNet intends to actively look for customers when the product is launched. The new product remains ready to launch, and when it does, TouchNet will be actively looking for customers. And, although TouchNet has not planned any pilot programs related to the new product, it plans to launch pilot programs if they are deemed useful. The new product remains ready to launch, and might be launched without a prior pilot program.

Plaintiff's belated reply argument that pending legislation means that TouchNet's new product is not ready to launch is wrong, as Plaintiff did not even attempt to explain the connection between possible legislation and whether TouchNet's product is ready to launch. TouchNet expects that the regulatory picture will become clearer as early as the completion of the spring meetings of the Rule Making Committee of the Department of Education. TouchNet's new product has remained ready to launch since 2012, and is likely to be launched as soon as the regulatory picture becomes clearer if it is determined to be viable under the regulation changes.

## CONCLUSION

For the reasons above, TouchNet respectfully moves the Court either to strike the new arguments and testimony presented for the first time in the reply, or to grant TouchNet leave to file a sur-reply of comparable length that discusses these new points.

Respectfully submitted,

SPENCER FANE BRITT & BROWNE, LLP


By: /s/ Lih C. Chen
  Patrick J. Whalen, Mo. Bar # 45594
  Kyle J. Elliott, Mo. Bar # 49145
  J. Nick Badgerow, Mo. Bar # 35855
  Lih C. Chen, Mo. Bar # 62263
  1000 Walnut Street, Suite 1400
  Kansas City, MO 64106
  (816) 474-8100
  (816) 474-3216 (facsimile)
  pwhalen@spencerfane.com
  kelliott@spencerfane.com
  nbadgerow@spencerfane.com
  lchen@spencerfane.com

DAY PITNEY LLP
Elizabeth A. Alquist, Ct. Bar # 15643
242 Trumbull Street
Hartford, CT 06103-1212
Tel: (860) 275-0100
Fax: (860) 275-0343
eaalquist@daypitney.com

Catherine Dugan O'Connor
One Canterbury Green, Ct. Bar #
201 Broad Street
Stamford, CT 06901
Tel: (203) 977 7538
Fax: (203) 399 5892
cdoconnor@daypitney.com

KUTAK ROCK LLP
I. Edward Marquette, Mo. Bar # 27492
1010 Grand Blvd, Suite 500
Kansas City, MO 64106
Tel: (816) 960-0090
Fax: (816) 960-0041
Ed.Marquette@KutakRock.com

ATTORNEYS FOR DEFENDANT
TOUCHNET INFORMATION SYSTEMS, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2014, I caused a copy of the foregoing document to be sent by electronic mail and U.S. Mail, postage prepaid, upon the following:

| | |
|---|---|
| Joseph V. Saphia, Esq. | Edward Dunham |
| Erika Selli, Esq. | Wiggin & Dana |
| Laura Chubb, Esq. | One Century Tower |
| Frommer Lawrence & Haug, LLP | 265 Church Street |
| 745 Fifth Avenue, Floor 10 | P.O. Box 1832 |
| New York, NY 10150 | New Haven, Connecticut 06508-1832 |
| jsaphia@flhlaw.com | edunham@wiggin.com |
| eselli@flhlaw.com | |
| lchubb@flhlaw.com | |

　　　　　　　　　　　　　　　　　　　　/s/ Lih C. Chen
　　　　　　　　　　　　　　　　　　　　　Attorney for Defendant